IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RANDALL L. LOWTHER, *et al.*, | : | Case No. 1:11-cv-877 |
| | : | |
| Plaintiffs, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING THE PARTIES' |
| | : | MOTIONS FOR FINAL APPROVAL |
| AK STEEL CORPORATION, | : | OF CLASS SETTLEMENT |
| | : | |
| Defendant. | : | |

This matter comes before the Court upon the Motion of Defendant AK Steel Corporation for Final Approval of Class Action Settlement (Doc. 37) and Plaintiffs' Motion for Final Approval of Class Settlement (Doc. 39). On December 21, 2012, this Court held a Fairness Hearing regarding the proposed Settlement Agreement. (Doc. 29-2.) After reviewing the Settlement Agreement and other related materials submitted by the parties, and after having heard from the parties at the fairness hearing, the Court has determined that the settlement should be approved as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e).

Therefore, for the reasons that follow, the Court hereby **GRANTS** the parties' motions for final approval of the class settlement.

I.   PROCEDURAL BACKGROUND

On September 19, 2012, following a series of settlement negotiations during which the parties reached a proposed settlement agreement, this Court entered an Order Granting Joint Motion for Preliminary Approval of Class Action Settlement (Doc. 36) and an Order Conditionally Certifying Classes (Doc. 35). The Court conditionally certified two non-opt-out classes pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with regard to the

1

Hourly and Salaried retirees from AK Steel's Zanesville Works facility. (Doc. 35.) The two classes were defined as follows:

> a. "Hourly Class" means retirees and surviving spouses of retirees who (a) worked for AK Steel at the Zanesville Works (and related facilities covered by the collective bargaining agreement for the Zanesville Works) under a collective bargaining agreement covering hourly production and maintenance employees, negotiated between AK Steel (or a predecessor) and the UAW or the Zanesville Armco Independent Organization ("ZAIO") (later UAW Local 4104); (b) retired from AK Steel between February 1, 1984 and May 20, 2006; (c) were eligible to participate in the AK Steel Hourly "Retiree Hospital and Medical Benefits Plan" or a predecessor plan at the time they retired; and (d) in the case of either retirees or surviving spouses, continue to be eligible to participate as of January 1, 2012.
>
> b. "Salaried Class" means retirees and surviving spouses of retirees who (a) worked for AK Steel at the Zanesville Works (and related facilities covered by the collective bargaining agreement for the Zanesville Works) under a collective bargaining agreement covering salaried employees, negotiated between AK Steel (or a predecessor) and the Zanesville Armco Independent Salaried Organization; (b) retired from AK Steel between February 1, 1984 and May 20, 2006; (c) were eligible to participate in the AK Steel Salaried Retiree Hospital and Medical Benefits Plan or a predecessor plan at the time they retired; and (d) in the case of either retirees or surviving spouses, continue to be eligible to participate as of January 1, 2012.

(Doc. 35.) Hereinafter, the two classes are referred to jointly at the "Plaintiff Class."

By September 19, 2012, Defendant AK Steel sent notice of the proposed class settlement to appropriate state and federal officials in order to comply with the ninety-day notice period required under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).[1] AK Steel retained the Garden City Group, a nationally prominent class action services provider, to administer the printing and mailing of the class notices to the class members. The notice packets, which described the terms of the Settlement Agreement in plain language and included a

---

[1] AK Steel sent notice of the settlement to the Attorney General of the United States, the United States Secretary of Labor, and state attorneys general, state departments of labor, and other appropriate state officials in each of the four states where class members reside.

complete copy of the Settlement Agreement, were sent to the last known addresses of the members of the Plaintiff Class by September 28, 2012. In total, 197 notices were mailed.[2] No class member has objected to the proposed settlement.

## II. ANALYSIS

The Sixth Circuit has established a three-step procedure for approval of a settlement agreement. *See Williams v. Vukovich*, 720 F.2d 909, 920–21 (6th Cir. 1983). "The settlement shall first be preliminarily approved by the court. Then notice must be given to interested persons. Finally, the court must decide whether the settlement agreement is reasonable after having held a hearing." *Thonen v. McNeil-Akron, Inc.*, 661 F. Supp. 1276, 1279 (N.D. Ohio 1987). *See also Merkner v. AK Steel*, No. 1:09-CV-423-TSB (S.D. Ohio, Order filed Jan. 10, 2011) (granting motion for final approval of class settlement).

Under Federal Rule of Civil Procedure 23(e), a class action settlement may be finally approved upon the court's finding that it is fair, reasonable, and adequate. "In making this determination, the court evaluates the proposed class action settlement in light of the general federal policy favoring the settlement of class actions." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008–09 (S.D. Ohio 2001) (noting the "strong presumption" in favor of settlement).

Several factors guide the inquiry of this Court, including the likelihood of success on the merits and the results obtained, risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in by the parties, the opinions of class

---

[2] During the December 21, 2012 hearing, Plaintiffs' counsel indicated that in some cases there were two class members living at the same address. In those instances, only one notice was sent to both class members.

counsel and class representatives, the reaction of absent class members, and the public interest. *See UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *Hainey v. Parrott*, No. 1:02-CV-733, 2007 WL 2752375, at *3 (S.D. Ohio Sept. 20, 2007). In this case, the settlement has been preliminarily approved and notice has been provided. As discussed below, the settlement for the Plaintiff Class provides value to the affected retirees and spouses and other class members and meets all the criteria for final approval. Accordingly, final approval of the settlement is justified. Reviewing the pertinent factors:

A.  Likelihood of Success/Results Obtained

The claims in this case were sharply disputed and the Court finds that bona fide disputes on the facts and law existed among the parties. *See UAW v. Gen. Motors Corp.*, 497 F.3d at 631 ("The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute."). The Court finds that weighing "the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement," the settlement herein represents an excellent result for the class members. *See id.* (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). Based on the uncertainty of Plaintiffs' claims, and the complexity and magnitude of the litigation, the settlement confers a substantial benefit on the class members.

By settling the case, Plaintiffs eliminated the risk that Defendant could potentially win on the merits and accordingly unilaterally reduce or eliminate the retiree benefit plans. The Court notes that this area of the law is a developing area with mixed decisions at the appellate level. *See, e.g., Wood v. Detroit Diesel Corp.*, 607 F.3d 427 (6th Cir. 2010) (reversing lower court ruling in favor of retirees). Accordingly, the settlement herein benefits the class by obtaining

substantial benefits for the class while avoiding the risks of continued litigation.

The Settlement Agreement describe the parties' sharply opposed respective positions, the parties' recognition of the risks they each faced in proceeding with the litigation, and the reasonable basis for their settlement herein. AK Steel took the position that it had the right to make changes to post-retirement health benefits for retirees under the applicable collective bargaining agreements and insurance plans. Plaintiffs claimed, on the other hand, that the class members earned their post-retirement health benefits through many years of service and that the benefits became vested upon their retirement and could not be changed in the manner sought. In the class settlement, both parties acknowledged the problems of proof in establishing their claims and defenses, the inherent uncertainty and risks of litigation, and the expense and delays that would be involved in continuing to litigate their dispute.

The settlement represents a significant benefit to the class. Pursuant to the proposed settlement, AK Steel is currently providing health benefits to class members and under the settlement will continue to do so until December 31, 2015. Under the settlement, the Company will continue to pay its share of medical and life insurance for class members through December 31, 2015 and will charge class members the lower 2010 rates. This is set to take place in either February or March, 2013, after the settlement is approved. Until that time, AK Steel is providing class members health care, life insurance, vision, dental and Medicare Part B reimbursements at 2011 premium rates. Within a reasonable time following the date this order is entered, believed to be either February 2013 or March 2013, the Company will then continue to pay for class members health and life insurance at 2010 premium rates but will no longer provide dental, vision or Medicare Part B reimbursement. This part of the settlement alone has a substantial

monetary value in that AK Steel's actuaries estimate the Company's cost to provide coverage from January 1, 2012 through December 31, 2015 to be $5,200,000.00. (Settlement Agreement, Section 7.2.1). Further, AK Steel will also make future payments for the benefit of Plaintiffs totaling $10,600,000.00 beginning in 2013 to be divided between a voluntary employee beneficiary association ("VEBA") and permit Plaintiffs to pay $1,275,000.00 for their attorneys' fees and costs per their agreement with Class Counsel as approved by the Court. (*Id*. § 7.2.2). The funds paid to the VEBA will be used to provide welfare benefits to class members beginning in 2016 under a new and revised plan of benefits to be created by trustees of the VEBA selected according to a procedure established by Plaintiffs. (*Id*. § 9.1.1). In exchange, Plaintiffs and the class members agree to release AK Steel from responsibility for any health and welfare benefits claims incurred on or after January 1, 2016, including any and all claims for payments of medical benefits, major medical benefits, managed care benefits, prescription drug benefits, premium reimbursement, Medicare Part B reimbursement, life insurance benefits, dental insurance benefits or vision insurance benefits incurred on or after January 1, 2016. (*Id*. § 9.1.2). Considering the relative merits of the case and the complexity, cost and uncertainty of this litigation, the Court finds that the settlement represents an excellent result for the class members and provides them a substantial benefit.

B.     Risk of Fraud or Collusion

Courts presume the absence of fraud or collusion unless proven otherwise. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1016 ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement unless evidence to the contrary is offered."); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483,

501 (E.D. Mich. 2008) ("Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion."). Further, where the Court is involved in helping the parties settle a case, there is "no risk of fraud or collusion among the parties." *Moran v. Wunderlich*, No. 3:05CV073, 2007 WL 3005235, at *2 (S.D. Ohio Oct. 12, 2007) (settlement negotiations mediated by Chief Magistrate Judge Merz were conducted at arms-length). Here, the settlement was the result of arms-length negotiations conducted over many months, the exchange and evaluation of an abundance of information, and the independent review and acceptance of the compromise by all parties. Two other Judges of this Court conducted multiple telephone conferences and in-person mediation sessions with the parties during this process and could ascertain the arms-length nature of the settlement negotiations from their supervision. *See Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 495539, at *4 (S.D. Ohio Feb. 21, 2008) (expressing "absolute[] confiden[ce]" that there was no collusion in retiree health care settlement negotiations because the "[c]ourt [was] involved in helping the parties settle [the] case"); *Merkner*, No. 1:09-CV-423-TSB (S.D. Ohio, Order filed Jan. 10, 2011) (granting motion for final approval of class settlement in case involving same law firms).

C. Amount of Discovery Engaged in by the Parties

The parties engaged in significant information sharing including the exchange of voluminous documents and actuarial expert input and data. The parties' submissions reflect that they carefully reviewed available data using expert actuarial consultants/experts. The extensive document and information sharing and review by consulting experts supports approval of the settlement. *See In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D.

Ohio 1990) (settlement approved where the parties were "fully knowledgeable about the facts and legal issues involved, as well as the strengths and weaknesses of their positions").

D.      Opinion of Class Counsel and Class Representatives

The record reflects that both class counsel and the class representatives support the settlement.  Further, the competency and experience of class counsel herein is not disputed.

E.      The Public Interest

The settlement is in the public interest not only by ensuring a significant amount of retiree medical benefits for a significant retiree group, but also by conserving the resources of the parties and the Court and promoting the "strong public interest in encouraging settlement of complex litigation and class action suits." *UAW v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *27 (E.D. Mich. July 13, 2006), *aff'd*, 497 F.3d 615 (6th Cir. 2007); *Hainey*, 2007 WL 2752375, at *9 ("Public policy generally favors settlement of class action lawsuits.").  Moreover, "the public interest clearly favors the providing of meaningful health insurance coverage for as much of the population [as] possible." *Bailey*, 2008 WL 495539, at *4.

F.      Complexity, Expense and Likely Duration of Litigation

Litigation over retiree benefits can be expensive and protracted.  *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (case litigated for nine or more years); *Bittinger v. Tecumseh Prods. Co.*, 201 F.3d 440 (6th Cir. 1999) (five years); *UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1478 (6th Cir. 1983) (seven years).  "The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006).  *See also In re*

*Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002) (same).

Based on the litigation of this case to date and its similarity to past cases that went on for years, the Court finds that but for the settling of this matter, it is likely that the litigation would have continued for more months and years both at the trial court and the appellate level. During the first eight months of this case, Plaintiffs filed two motions for preliminary injunctive relief and a motion for partial summary judgment. Defendant opposed any merits relief and in its Answer denied the claims and relevant allegations. Thus "there can be no doubt that the continued litigation of this case would require the parties to expend significant additional resources." *Bailey*, 2008 WL 495539, at *3. Because "[a]voiding such unnecessary expenditure of time and resources clearly benefits all parties and the Court," this factor weighs in favor of final approval of the Settlement Agreement. *In re Delphi Corp.*, 248 F.R.D. at 498.

G.  Reaction of Absent Class Members

As described above and in the submissions filed with the motions for final approval, all class members herein were sent a proper class notice which was approved by this Court as part of its preliminary approval order. The Court finds that the class notice met all due process requirements and that it "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 497 F.3d at 629.

There is not a single objection pending opposing the settlement. This lack of objectors is a powerful indicator that the settlement is fair, reasonable and adequate. *Compare Robinson v. Ford Motor Co.*, No. 1:04 CV 00844, 1:04 CV 00845, 2005 WL 5253339, at *5 (S.D. Ohio June 15, 2005) (holding that "a relatively small number of class members who object is an indication

9

of a settlement's fairness"); *In re Cardizem*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

### III. CONCLUSION

In summary, the Court finds that under Federal Rule of Civil Procedure 23(e) the settlement described herein is fair, reasonable and adequate and should be approved. Accordingly, the Court **GRANTS** the parties' motions for final approval of the settlement.

IT IS SO ORDERED.


                ___s/Susan J. Dlott_____
                Chief Judge Susan J. Dlott
                United States District Court